UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:   Johnnie Lee Hayden

       Debtor                                 CASE NO. 07-33943

                                                      CHAPTER     7

Citizens Union Bank

       Plaintiff

vs.

Johnnie Lee Hayden

       Defendant                             Adv. Proc. No. 08-3046

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiff against Defendant under 11 U.S.C. § 727(a)(4)(A) and 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6). For the reasons set forth below, the Court determines that Defendant is entitled to a discharge under 11 U.S.C. §727 and that Defendant's debts to Plaintiff are dischargeable. By virtue of 28 U.S.C. § 157(b)(2)(J) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

FINDINGS OF FACT

Defendant is a retired automobile body repairman, who now works for his son, Eric Hayden. During the years from 2005 through 2007, Defendant borrowed money from Plaintiff to finance the purchase of several items, including a 1997 Caterpillar excavator (the "Caterpillar") and a 1980 Komatsu bulldozer (the "Komatsu"). Defendant had an established pattern of business with

Plaintiff, typically borrowing money on a short-term basis to finance the purchase of items, which Eric Hayden would then re-sell through his business and use the proceeds to pay off the loans. In fact, Plaintiff's loan officer, Barbara Ann Morris, had been approving loans to Defendant for 15 to 20 years, either through Plaintiff or through Peoples Bank of Mount Washington. Ms. Morris testified, credibly, that she understood that Defendant had entered into the loan transaction regarding the Caterpillar and Komatsu to permit Eric Hayden to acquire the equipment for the son's business. As Ms. Morris stated, "this was kind of their normal business procedures."

According to Ms. Morris, Plaintiff typically required a loan application and financial statement from Defendant prior to making a him loan and would review his pay stubs or tax returns. In the case of secured loans like the ones in question here, Plaintiff "looked at more the collateral." As Ms. Morris testified: "And since [Defendant and Eric Hayden] pretty much had had a history of buying and selling equipment, you know, I was expecting this loan to be repaid from the sale of that collateral." Defendant testified, credibly, that he simply signed the loan documents for the Caterpillar and Komatsu to facilitate Eric Hayden's acquisition of them for his business without asking any questions about the documents. He also testified, credibly, that his wife prepared all of his tax returns and that he rarely read them. There is no dispute that the tax returns accurately show Defendant's and his wife's *joint* income. Defendant, however, clearly considers the vast majority of joint income as belonging to his wife because it is generated by her rental property business, in which he plays no role. Defendant testified that he believed that his personal income was around $12,000.00 in 2005, a fraction of the approximately $200,000.00 joint income reported for 2005.

Eric Hayden indeed sold the Caterpillar; however, this time he did not use any of the proceeds to pay off the loan. Defendant testified, credibly, that he does not know to whom the Caterpillar was sold. To date, Plaintiff has not been able to determine the identity of the purchaser of the Caterpillar.

Plaintiff pursued collection efforts against Defendant and Eric Hayden, with Plaintiff repossessing all of the collateral and selling everything but the Komatsu. Defendant filed his Chapter 7 bankruptcy petition on November 5, 2007. Defendant testified, credibly, that his lawyer prepared his bankruptcy petition on the basis of oral questions to Defendant and documents provided by Defendant's wife.

CONCLUSIONS OF LAW

Plaintiff seeks denial of a discharge to Defendant under 11 U.S.C. § 727(a)(4)(A) as well as under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6). To prevail, Plaintiff must prove each of the elements of those sections of the Bankruptcy Code by a preponderance of the evidence. *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000). The Bankruptcy Code should be construed liberally in favor of the debtor. *Id.*

11 U.S.C. § 727(a)(4)(A)

Under 11 U.S.C. § 727(a)(4)(A), a plaintiff must prove that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Keeney*, 227 F.3d at 685.

Plaintiff fails to prove that Defendant intended to defraud Plaintiff. The record shows very clearly that Defendant, while undoubtedly a skilled automobile repairman, is relatively unsophisticated with respect to financial dealings. His credible testimony indicates that he largely relies upon others, such as his son, his wife and his lawyer to prepare and understand financial documents. He simply signs them.

Because Plaintiff has failed to establish any fraudulent intent on the part of Defendant, the Court must find in favor of Defendant with respect to this claim.

11 U.S.C. § 523(a)(2)(A)

To obtain an exception from discharge under 11 U.S.C. § 523(a)(2)(A), a plaintiff must prove each of the following essential elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *See In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998). The debtor's intent is ascertained by looking at the totality of the circumstances, and all exceptions to discharge are to be strictly construed against the creditor. *Id.* at 281-282.

As discussed above with respect to 11 U.S.C. § 727(a)(4)(A), Plaintiff failed to provide any

evidence whatsoever from which this Court might infer a fraudulent intent by Defendant. Accordingly, the Court must also find in favor of Defendant with respect to this claim.

11 U.S.C. § 523(a)(2)(B)

Under 11 U.S.C. § 523(a)(2)(B), a debt may be declared non-dischargeable if four elements are met. First, the statement in writing must be materially false. Second, it must be respecting the debtor's or an insider's financial condition. Third, it must have been reasonably relied upon by the creditor. Fourth, it must have been caused to be made or published with intent to deceive. *Steier v. Best*, 287 B.R. 671, 675 (W.D.Ky. 2002).

As discussed above, Plaintiff has failed to provide any evidence that Defendant intended to deceive Plaintiff. Therefore, the Court must find in favor of Defendant with respect to this claim as well.

11 U.S.C. § 523(a)(4)

Under 11 U.S.C. § 523(a)(4), three distinct acts of malfeasance can create an exception to discharge, including "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. 523 (a)(4). To withhold a debt from discharge for "fraud or defalcation while acting in a fiduciary capacity," the Court must find that an express or technical trust existed between the parties. *Brady v. McAllister* (*In re Brady*), 101 F. 3d 1165, 1173 (6th Cir. 1996). The term fiduciary under section 523(a)(4) "does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *Id.* (*quoting Riden v. Sigler* (*In re Sigler*) 196 B.R. 762, 764 (Bankr. W.D. Ky. 1996)).

The term "fiduciary capacity," however, does not modify the words "embezzlement" or "larceny." *In re James*, 42 B.R. 265, 267 (Bankr. W.D. Ky. 1984). The Court need not find a fiduciary relationship existed to hold the debt nondischargeable on the grounds of embezzlement or larceny. *Id.* To succeed on a theory of embezzlement, the Plaintiff must prove that "(a) the Debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit. Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *Id.* To succeed on a theory of larceny, the Plaintiff must show that the Defendant has "wrongfully and with fraudulent intent taken property from its owner." *In re Rose*,

4

934 F.2d 901, 903 (7th Cir. 1991).

In this case, there are clearly no express or technical trusts at issue. Furthermore, as with the claims discussed above, there is no proof that Defendant intended to deceive or defraud Plaintiff. Accordingly, this claim must fail.

### 11 U.S.C. § 523(a)(6)

Plaintiffs seek damages and a determination that those damages are nondischargeable under 11 U.S.C. §523(a)(6). 11 U.S.C. §523(a)(6) states as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

To establish that a debt is nondischargeable under 11 U.S.C. §523(a)(6), a plaintiff must prove that the debtor not only intended the act that caused the harm, but intended the harm. *See Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998).* In this case, as with all of the claims discussed above, Plaintiff failed to provide any proof that Defendant intended to harm Plaintiff. Therefore, this claim, too, fails.

A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: October 7, 2008